Illinois Steel Co. vs. Jeka and wife.

ILLINOIS STEEL COMPANY, Respondent, vs. JEKA and wife, Appellants.

*December 10, 1900 — March 19, 1901.*

*Illinois S. Co. v. Bilot, ante,* p. 418, followed.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Action in ejectment. The issue in this case is the same, though different property is involved, as that in *Illinois S. Co. v. Bilot, ante,* p. 418. Plaintiff proved *prima facie* record title to territory including such property. The evidence on the part of defendants is to the effect that the territory of which the premises in dispute form a part is called "Jones Island;" that it was originally a sand flat, created by the movement of the waters of Lake Michigan, and was submerged by water from three to nine feet deep; that it was made feasible to construct buildings thereon by artificial filling.

The evidence was further to the following effect: In 1872 some nine families resided on the territory called "Jones Island." It was then all covered by water. One Truher owned one of the houses and claimed dominion over the entire territory. At the time stated Truher surrendered his

house and his claim of dominion over the entire territory to Jacob Muza, who immediately took possession of such house. Truher did not pretend to sell to Muza the houses occupied by the other persons located on the island, but pretended to surrender to him dominion over the entire island. There was some kind of a paper transfer by Truher to Muza of the house itself, but the paper has been lost. Whether such paper referred to any part of the territory aside from that occupied by the house, or anything but the house, does not clearly appear. From the time of the transaction related, between Muza and Truher, the former prohibited any person from exercising any act of ownership or from occupying any part of the territory except by his express permission. He exercised acts of ownership over the entire territory by preventing other persons from coming thereon as stated, and by building breakwaters to control the action of the water of Lake Michigan and prevent it from impairing the use of the premises for dwelling-house purposes, and by otherwise improving the territory for such purposes. From time to time he permitted persons to select portions of the submerged territory, to fill up the same, and locate houses thereon. There was no fence on any part of the territory when Muza located there, and no place to build a house except as made by artificial filling. About 1873 Muza pointed out to one John Zelin the territory in question as a place that he might fill up and occupy, receiving therefor a keg of beer. Zelin filled the territory allotted to him so as to make a foundation for his house above the level of the water, and constructed it thereon. He used the property continuously thereafter till about 1893. It was then, and had been for a long time prior thereto, inclosed by a fence, and in addition to the house originally built there were then a barn upon the property and some other improvements. In 1893, he sold the property to Joseph Konkel, who went into possession immediately upon Zelin vacating. Soon thereafter

Konkel sold the property to defendants, delivering posses-
sion thereof to them, and they thereafter occupied it con-
tinuously down to the time of the commencement of this
action.

At the close of the evidence the court directed a verdict
for plaintiff. Judgment was rendered upon such verdict,
establishing title in fee to the property in plaintiff, and
otherwise the judgment was rendered in accordance with
the statute in such cases.

For the appellants there were briefs by *Fiebing & Kil-
lilea* and *M. C. Krause*, and oral argument by *O. J. Fiebing*.

For the respondent there was a brief by *Van Dyke &
Van Dyke & Carter*, and oral argument by *W. E. Carter*.

The following opinion was filed January 8, 1901:

MARSHALL, J. The principles governing this case are
identical with those which rule *Illinois S. Co. v. Bilot, ante*,
p. 418. The same errors exist in this case which necessitate
a reversal of the judgment in that case, and it is ruled ac-
cordingly.

*By the Court.*— The judgment of the superior court is re-
versed, and the cause remanded for a new trial.

BARDEEN, J., took no part.

A motion for a rehearing was denied March 19, 1901.